# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| SENECA SMITH (#K-76299), | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 11 C 0188 |
| | ) | |
| v. | ) | Judge Elaine E. Bucklo |
| | ) | |
| DR. HALLBERG, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Seneca Smith (hereinafter, "Plaintiff" or "Smith"), presently in state custody at Stateville Correctional Center has filed suit pursuant to 42 U.S.C. § 1983. Smith alleges that from March 25, 2009, to January 23, 2010, Defendants, Dr. Hallberg, Dr. Stein, Dr. Jones, and Dr. Morjal, violated his constitutional rights by failing to provide adequate medical care for a serious medical condition at the Cook County Jail when he was denied medication for a serious mental health condition. More specifically, Plaintiff alleges he was denied medication for depression and ultimately attempted suicide.

Presently pending before the court are Defendants' motion for summary judgment (Doc. 65) and motion to strike Plaintiff's amended response to Defendants' material statement of facts and supporting exhibits (Doc. 79), as well as Plaintiff's motion in response to Defendants' motion for summary judgment (Doc. 75). In their motion for summary judgment Defendants argue that Dukes has: (1) failed to show that Defendants were deliberately indifferent; and (2) failed to exhaust his administrative remedies prior to filing suit as required by the Prisoner Litigation Reform Act, 42 U.S.C. § 1997 e(a). The record before the court establishes that Plaintiff failed to exhaust his administrative remedies prior to filing suit, and that

notwithstanding the question of whether he exhausted, the totality of care he received precludes a finding that Defendants were deliberately indifferent. Thus, for the reasons stated herein, Defendants' motion to strike is granted in part and denied in part and their motion for summary judgment is granted.

I.  **LEGAL STANDARD**

**STANDARD OF REVIEW ON A MOTION FOR SUMMARY JUDGMENT**

"The court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Vision Church v. Village of Long Grove*, 468 F.3d 975, 988 (7th Cir. 2006). In determining whether factual issues exist, the court must view all the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Weber v. Universities Research Assoc., Inc.*, 621 F.3d 589, 592 (7th Cir. 2010). The court does not "judge the credibility of the witnesses, evaluate the weight of the evidence, or determine the truth of the matter. The only question is whether there is a genuine issue of fact." *Gonzalez v. City of Elgin*, 578 F.3d 526, 529 (7th Cir. 2009), *citing Anderson v. Liberty Lobby*, 477 U.S. 242, 249-50 (1986).

However, Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Sarver v. Experian Information Solutions*, 390 F.3d 969, 970 (7th Cir. 2004) (citations omitted). "A genuine issue of material fact arises only if sufficient evidence favoring the

nonmoving party exists to permit a jury to return a verdict for that party." *Egonmwan v. Cook County Sheriff's Dept.*, 602 F.3d 845, 849 (7th Cir. 2010), *quoting Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 640-41 (7th Cir. 2008).

## Local Rule 56.1 (N.D. Ill.)

Defendants filed statements of uncontested material facts pursuant to Local Rule 56.1 (N.D. Ill.). Together with their motion for summary judgment, Defendants included a "Notice to Pro Se Litigant Opposing Motion for Summary Judgment" (Doc. 66), as required by Local Rule 56.2. That notice clearly explained the requirements of the Local Rules and warned Plaintiff that a party's failure to controvert the facts as set forth in the moving party's statement results in those facts being deemed admitted. *See, e.g., Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003).

Local Rule 56.1(b) requires a party opposing a motion for summary judgment to file:

> (3) a concise response to the movant's statement that shall contain
>
> (A) a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon, and
>
> (B) a statement, consisting of short numbered paragraphs, of any additional facts that require denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon.

L.R. 56.1(b).

The district court may rigorously enforce compliance with Local Rule 56.1. *See, e.g., Stevo v. Frasor*, 662 F.3d 880, 886-87 (7th Cir. 2011) ("Because of the high volume of summary judgment motions and the benefits of clear presentation of relevant evidence and law, we have

repeatedly held that district judges are entitled to insist on strict compliance with local rules designed to promote the clarity of summary judgment filings") (citing *Ammons v. Aramark Uniform Serv., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004). Although *pro se* plaintiffs are entitled to lenient standards, compliance with procedural rules is required. *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006); *see also Koszola v. Bd. of Educ. of the City of Chicago*, 385 F.3d 1104, 1108 (7th Cir. 2004). "We have ... repeatedly held that a district court is entitled to expect strict compliance with Rule 56.1." *Cichon v. Exelon Generation Co.*, 401 F.3d 803, 809 (7th Cir. 2005).

While Plaintiff disputes 21 of Defendants' 48 proposed statements of fact (statements ##8,9, 12, 15, 16, 18, 19, 21, 23, 24, 30, 32, 33, 35, 37, 38, 40, 42, 44, and 46-48), Defendants have filed a motion to strike Plaintiff's response, citing a variety of reasons as to why Plaintiff's responses were improper, including that some are argumentative, make conclusory statements, are based on statements from an affidavit that contradict prior testimony, are not based on personal knowledge, and are predicated on the findings in the U.S. Justice Department's letter of July 11, 2008, regarding iterating the findings of the investigation of the inadequate provision of medical care to detainees at the Cook County Jail, which Defendants contend is inadmissible as hearsay, lacks trustworthiness, is prejudicial, and has been held by other courts to be inadmissible.

## II.  FACTS

The following facts are taken from Defendants' Rule 56.1 statement, from the record attached to Defendants Rule 56.1 statement, and from Plaintiff's response to Defendant's motion for summary judgment to the extent that the facts are within his personal knowledge. See FED. R. EVID. 602. Smith was a pre-trial detainee at the Cook County Department of Corrections

("CCDOC"). (See Defendants' statement of facts #1). Plaintiff was incarcerated at the CCDOC from approximately March 2005 to July 9, 2010. *Id*. at #2.

Plaintiff has seen the Inmate Rules and Regulations. *Id*. at #45. Plaintiff filed many of grievances while at the CCDOC. *Id*. Plaintiff is familiar with the grievance process and the appeal process because he has filed grievances before. *Id*. The CCDOC Detainee Grievance Procedure was available to all inmates in 2009 and 2010. *Id*. at #46. The Detainee Grievance Procedure states that an inmate is to 1.) properly file a grievance within fifteen days after the alleged grievable offense; and 2.) appeal the grievance. *Id*. at #47.

From January 1, 2009 to January 25, 2011, the only grievance Plaintiff filed regarding his complaint that he was denied mental health medication was Grievance No. 2010X0917, which he filed on March 21, 2010. Id. at #48. In that grievance, Plaintiff complained, in summary, that he did not receive medication for his mental health problems from March 25, 2009 to January 25, 2010. *Id*. The grievance was returned to Plaintiff via U.S. mail on July 12, 2010 (the grievance response was mailed to Stateville Correctional Center). *Id*. The response was: "Mr. Williams' statement about the medications are correct (Plaintiff also uses the name "Roger Williams"). Medication in question was not prescribed." *Id*. Plaintiff did not appeal the grievance. *Id*.

Defendant Dr. Nneka Jones ("Dr. Jones") is employed as the Chief Psychologist at Cermak Health Services of Cook County ("Cermak"). *Id* at #3. Defendant Dr. Michael Hallberg ("Dr. Hallberg") was employed as a psychiatrist at Cermak. *Id*. at #4. Defendant Dr. Daniel Morjal ("Dr. Morjal") was employed as a psychologist at Cermak. *Id*. at #5. Defendant Dr. Leslie Stein ("Dr. Stein") was employed as a clinical psychologist at Cermak. *Id*. at #6.

In his complaint, Plaintiff alleges that he did not receive medication for his psychological problems from March 25, 2009 to January 23, 2010. *Id*. at #8. Plaintiff alleged that the lack of medication caused him to try to take his life. *Id*. Plaintiff suffers from depression and is bi-polar, which began prior to his incarceration at the CCDOC. *Id*. at #9 and see Plaintiff's Exhibit C p. Bates Stamped #907. Plaintiff believes he is schizophrenic at times. Defendants' statement of facts #9.

On March 20, 2009, Plaintiff swallowed forty to fifty pills. *Id*. at #30. Plaintiff was taken to the emergency room at Cermak and then spent five days at Stroger Hospital. *Id*. Upon Plaintiff's return to Cermak on March 26, 2009, he was evaluated by Cermak psychiatrist Dr. Maria Mynatt, who made note in Plaintiff's medical records that doctors at Stroger determined that Plaintiff suffered from episodic bradycardia (slow heart rate) and second-degree atrioventricular block (heart block). *Id*. Dr. Mynatt made further note that the "psychiatry service at Stroger recommended that psychotropic medication be discontinued." *Id*. Dr. Mynatt evaluated Plaintiff and assessed that Plaintiff did not have suicidal or homicidal ideation. *Id*. Based on her assessment, Dr. Mynatt discontinued Plaintiff's "psych" medications. *Id*.

Plaintiff again took pills on January 22, 2010, in an apparent attempt to commit suicide. *Id*. at #31. After the suicide attempt, Plaintiff was treated at the Cermak Emergency Room *Id*. While there, Plaintiff was also evaluated for sharp chest pains. *Id*.

From March 2009 to January 2010, Plaintiff was assigned to Division Ten at the CCDOC, which is a medical tier for acute psychological people. *Id*. at #17. Division Ten differs from other divisions in that there are doctors available 24 hours a day. *Id*. Plaintiff believes that Division Ten is where detainees with medical and mental health issues are sent so they can be treated "better." *Id*.; *see also* Plaintiff's deposition, Defendants' Exhibit A, p. 22. While in

Division Ten, Plaintiff saw psychiatric staff regularly, testifying in his deposition that he saw some psychiatric staff "almost every other day." Defendants' statement of facts at #14. During the relevant time period, Plaintiff saw Dr. Jones and Dr. Morjal about twice a month for treatment. *Id*. at #15. Also while in Division Ten, during the relevant time period, Plaintiff received his prescription medication, Neurontin, but he did not receive his psychotropic medication. *Id*. at #18.

Dr. Jones is employed as the Chief Psychologist at Cermak. *Id*. at #21. Dr. Jones has worked at Cermak as an intern, fellow, and staff psychologist from September 2006 to July 2009, and became Chief Psychologist on August 16, 2009. *Id*. As a psychologist, Dr. Jones does not prescribe medication. *Id*. at #22. If appropriate, Dr. Jones refers patients to a psychiatrist for medication. *Id*.

Dr. Jones treated Plaintiff on May 26, 2009 and again on June 12, 2009, and based on her assessment and professional opinion, she did not deem it necessary to refer Plaintiff to a psychiatrist for medication because Plaintiff denied feelings of distress, presented with no clinical indication of distress, and did not pose a threat to himself or to others. *Id*. at ##23 and 24. During both visits, Dr. Jones advised Plaintiff of ways to seek mental health services if needed in the future. *Id*. At the June 12, 2009, session, based on her assessment and professional opinion, Dr. Jones did not deem it necessary to refer Plaintiff to a psychiatrist for medication because Plaintiff presented as stable without medication, denied feelings of distress, denied acute psychotic symptoms, denied acute suicidal thoughts or plans, and did not pose a threat to himself or others. *Id*. at #24.

Dr. Hallberg was formerly employed as a psychiatrist at Cermak from 2007 to 2011. *Id*. at #25. Dr. Hallberg did not treat Plaintiff during the relevant time period, however, he was

assigned to Team 5, which treated detainees in Cermak and from Division 2 and Division 10 of the CCDOC. *Id*. at #26. Dr. Hallberg treated Plaintiff on February 18, 2009, March 1, 2009, and January 25, 2010. *Id*.

As a psychiatrist at Cermak, Dr. Hallberg prescribed medication but was not responsible for administering it to detainees. *Id*. at #27. When Dr. Hallberg treated Plaintiff on February 18, 2009, he prescribed Plaintiff Sertraline (50 mg po qam), Risperidone (2 mg po qbedtime), and Trazodone (100 mg po bedtime). *Id*. at #28. Dr. Hallberg again treated Plaintiff on March 1, 2009 and prescribed Plaintiff Risperidone (2 mg po qbedtime), Trazodone (100 mg po qbedtime), and Sertraline (100 mg po qam). *Id*. at #29.

Dr. Morjal was formerly employed as a psychologist at Cermak from December 2006 to August 2010. Id. at #34. As a psychologist, Dr. Morjal does not prescribe medication, however, if appropriate, Dr. Morjal would refer a patient to a psychiatrist for medication. *Id*. at #36. During the relevant time period, Dr. Morjal saw Plaintiff about twice a month for treatment. *Id*. at #15. Dr. Morjal treated Plaintiff on June 29, 2009, and based on his assessment and professional opinion, he did not deem it necessary to refer Plaintiff to a psychiatrist for medication. Id. at #37. On that date, Plaintiff reported that his mood was "good, smooth" and he denied having suicidal or homicidal ideation. *Id*. Dr. Morjal noted that his affect was "cheerful" and found that he did not pose a threat to himself or to others. *Id*. Dr. Morjal advised Plaintiff of ways to seek mental health services if needed in the future. *Id*. Dr. Morjal also treated Plaintiff on January 24, 2010, two days after his alleged suicide attempt, and on that date, Plaintiff told Dr. Morjal that he "never wanted to kill himself." Id. at #38.

Dr. Stein was formerly employed as a clinical psychologist at Cermak from 1994 to 2010. *Id*. at #39. As a psychologist, Dr. Stein does not prescribe medication, however, if

appropriate, she can refer a patient to a psychiatrist for medication. Id. at #41. Dr. Stein treated Plaintiff on May 20, 2009 and January 22, 2010. *Id*. at #40. When Dr. Stein treated Plaintiff on May 20, 2009, based on her assessment and professional opinion, she did not deem it necessary to refer Plaintiff to a psychiatrist for medication. *Id*. at #42. Dr. Stein determined that Plaintiff did not pose a threat to himself or others. *Id*. When Dr. Stein treated Plaintiff on January 22, 2010, based on her assessment and professional opinion, she referred Plaintiff to the psychiatric unit. *Id*. at #43.

Cermak mental health staff evaluated Plaintiff on multiple other occasions during the relevant time period of March 25, 2009 to January 23, 2010. *Id*. at #44. On May 19, 2009, Plaintiff was evaluated, at which time he strongly denied suicidal ideation and, therefore, was not referred to the psychiatric unit. *Id*. On May 28, 2009, Plaintiff was evaluated by a member of the mental health staff, who found that Plaintiff had no current symptoms and did not refer Plaintiff to the psychiatric unit. *Id*. On June 4, 2009, Plaintiff was again evaluated by a mental health service specialist, who found that Plaintiff did not have suicidal or homicidal ideation and did not refer Plaintiff to the psychiatric unit. *Id*. Plaintiff was further evaluated on November 9, 2009 and December 22, 2009; on both dates, Plaintiff was not referred to the psychiatric unit after evaluation and assessment. *Id*.

### III.   ANALYSIS

**Plaintiff Failed to Exhaust his Administrative Remedies.**

The court cannot entertain Plaintiff's deliberate indifference claim because Defendants have demonstrated that he failed to exhaust administrative remedies prior to bringing suit. The Prison Litigation Reform Act of 1996 contains a comprehensive administrative exhaustion requirement. Under that statute, "[n]o action shall be brought with respect to prison conditions

9

... by a prisoner ... until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Massey v. Wheeler*, 221 F.3d 1030, 1034 (7th Cir. 2000); *Booth v. Churner*, 531 U.S. 956 (2001). "[I]f a prison has an internal administrative grievance system through which a prisoner can seek to correct a problem, then the prisoner must utilize that administrative system before filing a claim under Section 1983." *Massey v. Helman*, 196 F.3d 727, 733 (7th Cir. 1999); *Smith v. Zachary*, 255 F.3d 446, 450 (7th Cir. 2001).

An inmate must comply with the rules established by the State [or, in this case, county] with respect to the form and timeliness of grievances. *Pozo v. McCaughtry*, 286 F.3d 1022, 1023-25 (7th Cir. 2002) (where prisoner failed to avail himself of the administrative grievance process in a timely manner, he was barred from pursuing relief in federal court). In order to exhaust, a prisoner "must take all steps prescribed by the prison's grievance system." *Ford v. Johnson*, 362 F.3d 395, 397 (7th Cir. 2001).

Smith prepared one grievance, on March 21, 2010, regarding his issues with receiving medication. Plaintiff argues in his response to Defendants' statements of facts and motion for summary judgment that he filed three other grievances in April 2009, June 2009, and October of 2009, however, he provides no evidence of those grievances. A motion for summary judgment "requires the responding party to come forward with the evidence that it has--it is the 'put up or shut up' moment in a lawsuit." *Eberts v. Goderstad*, 569 F.3d 757, 767 (7th Cir. 2009) (citations omitted). As Plaintiff has provided no evidence of any other grievances, the only one at issue is the one he filed on March 21, 2010.

Plaintiff is alleging constitutionally inadequate medical care from March 25, 2009 to January 23, 2010, at the Cook County Jail. The evidence indicates that the Plaintiff submitted his only grievance on March 21, 2010. The grievance policy at the Cook County Jail requires

pre-trial detainees to submit grievances within 15 days of the grievable offense. (See Defendants' Exhibit F, ¶5 and Exhibit G, CCDOC General Order 14.5 (grievance policy), Section III(B)(2)). While Plaintiff alleges an ongoing violation, the end date of his allegations is January 23, 2010. In order to be in compliance with the grievance policy, his grievance had to be filed by February 7, 2010, making his grievance six weeks overdue. Additionally, although Plaintiff received a response to his grievance on July 12, 2010, he never appealed the grievance, as required.

Plaintiff attempts to argue that the grievance policy was unavailable to him during the relevant time period. However, inmates at the Cook County Jail receive a handbook describing basic programs and procedures. *See* John Howard Association's Court Monitoring Report, filed on May 12, 2000, in *Duran v. Sheahan*, 74 C 2949 (N.D. Ill.) (reflecting that the Cook County Jail has an established and publicized grievance procedure). Plaintiff admits that he was aware of and understood the grievance procedure at the Cook County Jail. To satisfy the PLRA's exhaustion requirement, "a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo*, 286 F.3d at 1025 (7th Cir. 2002).

While Plaintiff attempts to contest the fact that he did not fully exhaust his administrative remedies, he does so in a non-responsive fashion. He argues that the response took too long, making the process unavailable to him, and that because the grievance was decided on its merits, he completed the process, citing to *Dole v. Chandler*, 438 F.3d 804 (7th Cir. 2006) and *Ford v. Johnson*, 362 F. 3d 395 (7th Cir. 2004). However, Plaintiff misconstrues the holdings in *Dole* and *Ford*. The court in *Dole* held that only affirmative misconduct on the part of jail employees can make exhaustion unavailable. *See Dole,* 438 F.3d at 809. Plaintiff has provided no evidence of such misconduct. With respect to Plaintiff's reliance on the holding in *Ford*, he is equally

misguided. In *Ford*, the court held that in order to exhaust, a prisoner "must take all steps prescribed by the prison's grievance system." *Ford,* 362 F.3d at 397.

Additionally, Plaintiff's beliefs about the availability of the grievance process do not excuse exhaustion. *Twitty*, 226 Fed. Appx. At 596; *citing Chelette v. Harris*, 229 F.3d 684, 688 (8th Cir. 2000) (as the Eighth Circuit has observed, 42 U.S.C. § 1997e(a) "says nothing about a prisoner's subjective beliefs, logical or otherwise, about administrative remedies that might be available to him. The statute's requirements are clear: If administrative remedies are available, the prisoner must exhaust them."); *see also Yousef v. Reno*, 254 F.3d 1214, 1221 (10th Cir. 2001)

As Plaintiff admitted in his deposition that he understood the grievance process at the Cook County Jail, he filed a grievance in this matter (albeit outside of the guidelines set by the rules) and failed to appeal the response he received on July 12, 2010, it is clear that the grievance process was available to Plaintiff and that he failed to properly avail himself of it. Further, the court notes that Plaintiff is a frequent litigator, having no fewer than seven cases pending before this court, at present. As such, it is clear Plaintiff has an understanding that he must exhaust his administrative remedies prior to filing suit. Consequently, Defendants are entitled to judgment on this basis alone.

**Failure on the Merits**

While the court has found that Plaintiff has failed to exhaust his administrative remedies prior to filing suit, the record also makes clear that Plaintiff has failed to establish that Defendants were deliberately indifferent to his serious medical needs. Pretrial detainees have a right to adequate medical treatment under the Fourteenth Amendment. *See Williams v. Rodriguez*, 509 F.3d 392, 401 (7th Cir. 2007). Claims of deliberate indifference to a serious

medical need of a pretrial detainee under the Fourteenth Amendment uses the same standard for deliberate indifference to a serious medical need under the Eighth Amendment. *Id*.

A claim of deliberate indifference includes both an objective and subjective element. *See Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002). As to medical care, "the objective element requires that the inmate's medical need be sufficiently serious" to implicate the Constitution. *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997). A medical need is "serious" if has been diagnosed by a physician as mandating treatment or it so obvious that even a lay-person would recognize the necessity of medical treatment. *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011). Mental health issues such as those suffered by Plaintiff, including attempts at suicide have been recognized by the courts to be an objectively serious medical condition. *Sanville v. McCaughtry*, 266 F3d 724, 733-4 (7th Cir. 2001).

The subjective element requires that the prison official act with sufficiently culpable state of mind, "something akin to criminal recklessness." *Norfleet v. Webster*, 439 F.3d 392, 397 (7th Cir. 2006). The negligent or inadvertent failure to provide adequate medical care is not actionable under 42 U.S.C. § 1983 because such a failure is not an "unnecessary and wanton infliction of pain" that is "repugnant to the conscience of mankind." *Estelle*, 429 U.S. at 106. Furthermore, medical negligence is insufficient to demonstrate deliberate indifference. *See Foelker*, 394 F.3d at 513. However, a prisoner does not need to prove that the prison official "intended, hoped for, or desired the harm that transpired." *Haley v. Gross*, 86 F.3d 630, 641 (7th Cir. 1996). Instead, it is sufficient if the prisoner demonstrates that the prison official actually knew of a substantial risk of harm to the prisoner and acted or failed to act in disregard to that risk. *See Walker*, 293 F.3d at 1037. An inmate can demonstrate that a prison official knew of a substantial risk of harm if the fact of that risk is obvious. *Id.* The court examines the totality of

the medical care provided and isolated incidents of delay do not rise to the level of deliberate indifference. *See Walker v. Peters*, 233 F.3d 494, 501 (7th Cir. 2000); *Gutierrez v. Peters*, 111 F.3d at 1374-75.

To satisfy the subjective component, a prisoner must demonstrate that the defendant in question was aware of and consciously disregarded the inmate's medical need. *Farmer*, 511 U.S. at 837; *Estelle*, 429 U.S. at 103-04; *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008). The fact that a prisoner has received **some** medical treatment does not necessarily defeat his claim; deliberate indifference to a serious medical need can be manifested by "blatantly inappropriate" treatment, *Greeno v. Daley*, 414 F.3d 645, 654 (7th Cir. 2005) (emphasis in original), or by "woefully inadequate action," as well as by no action at all. *Reed v. McBride*, 178 F.3d 849, 854 (7th Cir. 1999); *Allen v. Wexford Health Sources, Inc.*, No. 11 C 3834, 2011 WL 2463544, *1 (N.D. Ill. Jun. 17, 2011) (Kocoras, J.). However, the court examines the totality of the medical care provided to determine whether the care, or lack thereof, rises to the level of deliberate indifference. *See Walker v. Peters*, 233 F.3d 494, 501 (7th Cir. 2000); *Gutierrez*, 111 F.3d at 1374-75.In this case, Plaintiff cannot satisfy the subjective standard.

The record establishes that the totality of treatment provided to Plaintiff was constitutionally sufficient and did not rise to a level of deliberate indifference. Dr. Hallberg is a psychiatrist and treated Plaintiff on February 18, 2009, and March 1, 2009. On both dates, Dr. Hallberg prescribed for him several psychotropic medications. Plaintiff attempted to harm himself by swallowing approximately forty pills on March 20, 2009.

To be liable under the Eighth Amendment for an inmate's suicide, "a prison official must be cognizant of the significant likelihood that an inmate may imminently seek to take his own

life and must fail to take reasonable steps to prevent the inmate from performing this act." *Sanville*, 266 F3d at 737; *citing Turbin*, 226 F.3d at 529 (citations omitted). However, "an Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer*, 511 U.S. at 842. Whether a prison official had the requisite knowledge is a question of fact. *See id*. If "the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus 'must have known' about it, then such evidence could be sufficient to permit a trier of fact to find that the defendant-official had actual knowledge of the risk." *Id*. 842-43. There is no evidence in the record that Dr. Hallberg acted with such disregard, and consequently no such question of fact. At best, Plaintiff could establish only a difference in opinion as to his course of treatment and not a violation of his right to constitutionally adequate medical care. *See Estelle v. Gamble*, 429 U.S. at 105-06.

After his apparent suicide attempt on March 20, 2009, Plaintiff was taken to the emergency room at Cermak Health Services and was hospitalized for five days for treatment. While he was at Stroger Hospital, he was also treated for episodic bradycardia (slow heart rate) and atrioventricular block. The record reflects that when Plaintiff returned to Cook County Jail, Dr. Mynatt treated him and found that he did not have suicidal or homicidal ideation. Based on the recommendation of the psychiatric services at Stroger Hospital and her assessment of Plaintiff, Dr. Mynatt discontinued his psychotropic medications.

Plaintiff attempts to dispute the fact that psychiatric services were provided by directing the court to a statement in the progress note generated at Stroger, stating that he should be carefully monitored while taking medications and should not be given more than one dose at a

time.  (See Plaintiff's Exhibit C, p. 1.)   The statement cited by Plaintiff is not, however, a prescription for medication; it is merely a caution reflecting the fact that he had recently attempted suicide by taking pills.  As such, it does not create a question of fact.

When returned to Cook County Jail, Plaintiff was assigned to the housing unit Division Ten, which is a medical tier for detainees with acute psychological issues.  Plaintiff admitted in his deposition that Division Ten differs from other divisions at the Jail in that detainees with medical and mental issues can be better treated, and there are doctors available twenty-four hours a day.  During the relevant time period, Dr. Jones, a psychologist, treated Plaintiff on May 26, 2009, and June 12, 2009.  Dr. Morjal, also a psychologist, treated Plaintiff on June 29, 2009, and Dr. Stein treated Plaintiff on May 20, 2009.  On all four occasions, Plaintiff denied feelings of distress and acute psychotic symptoms, and presented as stable without medication.  Because of their assessment of Plaintiff, and based upon their professional opinions, all three doctors found it unnecessary to refer Plaintiff to a psychiatrist for medication.  They all advised Plaintiff of the ways in which he could seek mental health services should the need arise.

Plaintiff attempts to create a question of fact with respect with respect to the treatment provided by Defendants Drs. Jones, Morjal, and Stein by stating that they are lying about what occurred on May 20, 2009, May 26, 2009, June 12, 2009, and June 29, 2009.  To the extent that the response to a statement of fact on summary judgment is argumentative and not supported by some other factual support, the statement is deemed admitted.  *Graziano v. Vill. of Oak Park*, 401 F. Supp. 2d 918, 937 (N.D. Ill. 2005) (Shadur, J.)  Again, a motion for summary judgment "requires the responding party to come forward with the evidence that it has--it is the 'put up or shut up' moment in a lawsuit."  *Eberts*, 569 F.3d at 767.

What Plaintiff does provide is his "declaration", which is an eight-page statement of what his testimony would be. In it, Plaintiff complains of the quality of the care that he received, and accuses Defendants of lying, but provides no evidence of the alleged failure to provide care. Defendants' statements of facts are based on the medical records of the treatment provided. Consequently, Plaintiff has failed to create a material question of fact regarding the care provided by Drs. Stein, Jones and Morjal. Plaintiff's response is thus insufficient, and Defendants' statements are deemed admitted.

The record establishes that Plaintiff continued to have access to mental health care, and that he was evaluated on May 19, 2009, May 28, 2009, June 4, 2009, November 9, 2009, and December 22, 2009. On each of those occasions, Plaintiff was found to not be a danger to himself or others and to not require referral to a psychiatrist for medications.

On January 22, 2010, Plaintiff again took a large number of pills, in another apparent suicide attempt. On that date Dr. Stein referred him to the psychiatric unit at Cermak for treatment. Dr. Hallberg treated Plaintiff three days later, prescribing for him Zoloft, Risperidone, and Trazodone.

The totality of care Plaintiff received from March 25, 2009, to January 23, 2010, indicates that Defendants were not deliberately indifferent. Each used his or her professional medical judgment with respect to the treatment provided and there is no indication in the record that any Defendant deviated from the standard of care or acted unreasonably with respect to Plaintiff's mental health care. With respect to the suicide attempts themselves, there is no evidence in the record to support a finding that any Defendant had the requisite knowledge of a substantial risk of harm to Plaintiff's health or safety. *See Collins v. Seeman*, 462 F.3d 757, 762

(7th Cir. 2006). Although each of Defendants had treated Plaintiff and was aware of his history, there is no indication that they intentionally disregarded a known, imminent suicide risk.

As the Seventh Circuit instructs, "the Eighth Amendment does not require that prisoners receive 'unqualified access to health care,'" but "[r]ather, they are entitled to only 'adequate medical care.'" *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006) (citations omitted). Here, Defendants provided Plaintiff with abundant, adequate care to manage his mental health issues. Based on the treatment provided by Defendants Hallberg, Jones, Morjal, and Stein, there is insufficient evidence in the record to create a genuine issue of fact for trial that any possible defendant was deliberately indifferent to Plaintiff's medical condition in violation of the Constitution. Accordingly, the court grants the motion for summary judgment and dismisses this case.

## IV.  CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (Doc. 65) is granted and Plaintiff's motion in response to Defendants' motion for summary judgment (Doc. 75) is denied as moot. Defendants' motion to strike Plaintiff's response to their L.R. 56.1 statement of facts (Doc. 79) is granted in part and denied in part. This matter is closed on the court's docket.

Dated: September 25, 2012

_____
Elaine E. Bucklo
U.S. District Court Judge